SAYYAH et al., Appellants,

v.

CUTRELL, Appellee.

[Cite as *Sayyah v. Cutrell* (2001), 143 Ohio App.3d 102.]

Court of Appeals of Ohio,
Twelfth District, Brown County.

No. CA2000–06–018.

Decided April 9, 2001.

104

*John Sayyah, pro se.*

*Brenda Frank, pro se.*

*Rendigs, Fry, Kiely & Dennis, David W. Peck, Michael P. Foley* and *James J. Englert,* for appellee.

VALEN, Judge.

Plaintiffs-appellants, John Sayyah and Brenda Frank, appeal a decision of the Brown County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Jay Cutrell ("Cutrell"), in a legal malpractice action.

Appellants are residential property owners at Lake Waynoka, in Sardinia, Brown County, Ohio, and are required to be dues-paying members of the Lake Waynoka Property Owners Association ("WPOA"). Cutrell is the attorney for WPOA.

On April 26, 2000, appellants filed a legal malpractice complaint against Cutrell. Appellants also filed for a temporary and permanent injunction. The complaint alleges that because appellants are WPOA members whose "dues help pay [Cutrell's] fees as attorney to WPOA," Cutrell is their *de jure* attorney. The complaint cryptically alleges that Cutrell breached his duty of care to appellants in several ways, such as "[f]ailing to advise [appellants] that an irreconcilable conflict of interest exists in which he is defense attorney to a course of action brought by [appellants] that is adverse to their vested interests." The trial court read that statement as alleging a breach of duty by Cutrell's "defending a lawsuit commenced by [appellants] while concurrently acting as counsel for the WPOA." The complaint sought a temporary and permanent injunction to remove Cutrell "as attorney to both WPOA and the party in which [appellants] brought a course of action against in which [Cutrell] acts and continues to act as defense attorney to the detriment of [appellants]." As it will be detailed later, Cutrell is apparently also the attorney for a water and sewer district that is being sued by appellants and other WPOA members.

On the same day that they filed their complaint, appellants also filed a motion for a temporary restraining order "to remove [Cutrell] as attorney to both

[WPOA] and the party in which [Cutrell] acts as defense attorney to the detriment of [appellants'] best interests." Cutrell filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). By entry filed May 8, 2000, the trial court *sua sponte* converted the motion to dismiss into a motion for summary judgment. Cutrell thereafter filed a memorandum in support of the motion for summary judgment.

On May 15, 2000, appellants filed a motion demanding that Cutrell produce all documents pertaining to a "Contractual Services Agreement" drafted by Cutrell and entered into on July 13, 1998 by WPOA and the Waynoka Regional Water and Sewer District (the "Water and Sewer District"). The motion alleges that the agreement "allows * * * WPOA * * * to contract out staff and personnel [presumably of WPOA] to [the Water and Sewer District] without said staff and personnel being informed of their legal rights to refuse or accept such an agreement[.]"

On May 23, 2000, appellants filed a memorandum in opposition to the motion for summary judgment. An affidavit filed that day by Joyce Casper, a dues-paying member of WPOA, states that Casper is a plaintiff in a case pending against the Water and Sewer District. Casper's affidavit also refers to Cutrell's "conflicting interest as both Attorney to WPOA and as Attorney to [the Water and Sewer District]" and to Cutrell's "being able to be on both sides of a legal issue that is being adjudicated in defending another entity that is a Defendant in a legal action brought by [Casper] and others." Appellants also each filed their own affidavit. Appellant Frank's affidavit refers to the fact that Frank "had a lawsuit pending against [the Water and Sewer District]."

The foregoing reasonably indicates that Cutrell is WPOA's attorney and that he also represents the Water and Sewer District in a lawsuit brought against it by appellants and other dues-paying members of WPOA. However, there is no evidence in the record as to what the lawsuit is about. While appellants are clearly upset about the agreement entered into between the Water and Sewer District and WPOA, it is not clear from the record that the agreement is the cause of action for the lawsuit.

By decision filed June 2, 2000, the trial court granted summary judgment in favor of Cutrell and dismissed appellants' complaint. This appeal follows.

Appellants' *pro se* brief fails to contain assignments of error as required by App.R. 16(A)(3) and Loc.R. 11. However, it is readily apparent that they are challenging the trial court's order granting summary judgment in favor of Cutrell. In the interest of justice, we therefore construe appellants' brief as raising an assignment of error in which they claim the trial court erred by granting summary judgment in favor of Cutrell. Under the assignment of error, appellants raise two subissues, to wit, (1) the trial court erred by denying their

motion to disqualify Cutrell, and (2) the trial court erred by rejecting their legal malpractice claim.

Pursuant to Civ.R. 56(C), summary judgment is appropriate if the trial court, upon viewing the evidence in the light most favorable to the party against whom the motion is made, determines that (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. This court reviews a trial court's decision to grant summary judgment *de novo.* *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316, 319–320.

In granting summary judgment in favor of Cutrell, the trial court found that while Cutrell was appellants' attorney, he was not disqualified [1] from representing the Water and Sewer District in appellants' lawsuit against it because appellants failed to provide any evidence of a conflict of interest. The trial court also found that appellants failed to prove legal malpractice. We first address the trial court's denial of appellants' motion to disqualify Cutrell.

In determining whether an attorney should be disqualified, a trial court must first determine whether there is or has been an attorney-client relationship. *Henry Filters, Inc. v. Peabody Barnes, Inc.* (1992), 82 Ohio App.3d 255, 260, 611 N.E.2d 873, 875–876. If there is no current or past attorney-client relationship, the motion to disqualify should be denied. If, on the other hand, the court determines that there is or has been an attorney-client relationship, the court must then determine whether a conflict of interest exists. Only if a conflict exists need the attorney be disqualified. *Id.* The decision to disqualify an attorney is within the sound discretion of the trial court. *Id.*

WPOA is an incorporated association. In determining whether Cutrell was appellants' attorney, the trial court first noted that several courts have held that "the 'client' of an *unincorporated* association, for the purposes of disqualification, is the association's members." (Emphasis *sic.*) The trial court then relied upon *Glueck v. Jonathan Logan, Inc.* (C.A.2, 1981), 653 F.2d 746, and held that "members of an incorporated association are the clients of [the association's] attorney, for purposes of disqualification." The trial court then found that Cutrell was appellants' attorney for disqualification purposes.

In *Glueck,* the law firm that the plaintiff sought to disqualify represented an incorporated trade association on an ongoing basis. The sole function of the

---

1. The record shows that appellants never filed a motion to disqualify Cutrell. It appears that the trial court *sua sponte* construed appellants' motion to remove Cutrell as a motion to disqualify Cutrell.

association was to negotiate a group collective bargaining agreement on behalf of its members with a large labor union. One of the association members was R & K Originals, a division of Jonathan Logan, Inc. The law firm undertook representation of Charles Glueck, a former employee of Logan, against Logan in a breach of contract action based on the collective bargaining agreement. R & K Originals' president had taken part in negotiating the agreement. The law firm was disqualified because of the possibility that its attorneys might have gained knowledge of confidential information bearing on the association member's defense to the later action during the course of the earlier representation. *Id.* at 750.

Unlike the trial court, we find that *Glueck* may not be read as a blanket principle that members of an incorporated association are the clients of the association's attorney for purposes of disqualification. The issue in *Glueck* was "whether in the circumstances of [that] case a law firm that represents an incorporated trade association may represent an individual client in a suit against a corporation one division of which is a member of the association." *Id.* at 747.

We find that *Glueck* is factually distinguishable from the case at bar and therefore does not apply. The law firm in that case sought to bring a lawsuit on behalf of a third party against a member of an association. In the case at bar, the members of the association of which Cutrell is the attorney brought a lawsuit against another organization allegedly represented by Cutrell. "This simply is not the same factual situation addressed by the *Glueck* court; the equities are different, and the analysis must differ, as well." *Shadow Isle, Inc. v. Am. Angus Assn.* (Sept. 22, 1987), W.D.Mo. No. 84–6126–CV–SJ–6, 1987 WL 17337, at * 4, unreported. As the *Shadow Isle*[2] court aptly noted:

"[B]ecause of the differing facts, this is not a case which presents the kind of risks with which the *Glueck* court was concerned. There is no danger that Jenner & Block attorneys will feel a divided loyalty to two acknowledged clients, since the Association is the only client recognized by the attorneys.

"* * *

"While disqualification may be required in some cases in which there exists some independent basis for the member's belief that it was personally represented by the attorneys sought to be disqualified, the disqualification cannot be based on a *per se* rule that each member of an incorporated * * * association is the

---

2. In *Shadow Isle,* the plaintiff was a member of an incorporated association that was represented by the law firm of Jenner & Block. The plaintiff filed a motion to disqualify Jenner & Block on the basis that "the representation by Association counsel of interests adverse to those of an association member on a matter substantially related to that counsel's representation of the Association and its membership creates an irreconcilable conflict of interest[.]" *Id.* at 1. The motion to disqualify was denied.

client of the association's attorneys. *Glueck* may not be read so broadly even on its own facts, and certainly not on these.

"In short, the rationale of *Glueck* does not apply to these facts, and plaintiff cannot be said to have enjoyed a relationship with Jenner & Block which would now justify that firm's disqualification simply by virtue of its membership in the Association." *Id.* at * 4–5.

■ Applying the foregoing reasoning to the case at bar, we find that an attorney's representation of an association does not automatically and necessarily result in the attorney's representation of the individual members of the association. We therefore find that Cutrell was not appellants' attorney for purposes of disqualification. Absent such an attorney-client relationship, we need not consider whether there was a conflict of interest.

■ However, even considering the possibility of a conflict of interest, we find that the trial court properly denied appellants' motion to disqualify. It is well established that disqualification of an attorney "should not be based solely upon allegation of a conflict of interest." *Kitts v. U.S. Health Corp. of S. Ohio* (1994), 97 Ohio App.3d 271, 275, 646 N.E.2d 555, 558. "The moving party has the duty of showing what the connection between the cases is. Second, the moving party must provide some evidence that a need for the disqualification exists." *Phillips v. Haidet* (1997), 119 Ohio App.3d 322, 327, 695 N.E.2d 292, 296. We agree with the trial court that "it is impossible to determine whether a conflict exists. All the Court can tell from the record is that [Cutrell] is the attorney for both the WPOA and the [Water and Sewer District] and that the [Water and Sewer District] is being sued by members of the WPOA. [Appellants] have wholly failed to supply this Court with any information detailing how, by allowing [Cutrell] to continue his representation against them, unfair advantage will be taken of them. Without more than conclusory statements that they will be prejudiced, this Court is not willing to disqualify [Cutrell]."

We add that, except for their unsubstantiated allegations of conflict of interest, appellants have not set forth any specific facts to show how Cutrell's representation of both WPOA and the Water and Sewer District are so related that a need for disqualification exists. As already noted, there is no evidence in the record as to what appellants' lawsuit against the Water and Sewer District entails. The trial court properly denied appellants' motion to disqualify.

■ We now turn to appellants' legal malpractice action against Cutrell. It is well established that to establish a cause of action for legal malpractice, one must show (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058, 1060–1061. It is also well

established that "[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus.

In addressing appellants' legal malpractice claim, the trial court first stated that "merely because one may be a 'client' for the purposes of disqualification does not, *a fortiori*, dictate that he or she is likewise a 'client' for all purposes." The trial court also stated that "before an attorney may be held liable for malpractice, it must be shown that the plaintiff was either in privity—*i.e.*, that an attorney-client relationship existed—with the attorney-defendant or that the attorney acted 'maliciously' toward the plaintiff." The trial court thereafter rejected appellants' legal malpractice claim on the ground that they had failed to establish either that they were Cutrell's clients or that Cutrell had acted maliciously.

We find that the trial court's restatement of the law in Ohio regarding legal malpractice is wrong in that it (1) equates the existence of privity with the existence of an attorney-client relationship, and (2) requires privity between the third party and the client's attorney.

As a general rule, an attorney is liable to his client alone, not to third parties, for negligence in the conduct of his professional duties. *Stoll v. Kennedy* (1987), 38 Ohio App.3d 102, 104, 526 N.E.2d 821, 822–823. A careful reading of *Krahn*, 43 Ohio St.3d 103, 538 N.E.2d 1058, and of the syllabus in *Scholler*, 10 Ohio St.3d 98, clearly shows that unless the party bringing a legal malpractice action against an attorney is already a client of the attorney, only one who is in privity with the individual or organization represented by the attorney has standing to sue the attorney for legal malpractice.[3] Therefore, if an attorney-client relationship exists, there is no need to determine whether privity exists. If, on the other hand, there is no attorney-client relationship, then, and only then, must it be determined whether privity exists. See *Hile v. Firmin, Sprague & Huffman* (1991), 71 Ohio App.3d 838, 595 N.E.2d 1023.

With regard to privity, the Supreme Court of Ohio reiterated that "an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless *the third party is in privity with the client for whom the legal services were performed,* or unless the attorney acts with malice." *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 76, 512 N.E.2d 636, 638. (Emphasis added.) The privity is therefore between the third party and

---

**3.** Alternatively, one who is not a client of the attorney may nevertheless bring a legal malpractice action if the attorney acted maliciously.

the client (of the attorney), *not* between the third party and the attorney (of the client).

After thoroughly reviewing the record, we find that there is no attorney-client relationship between appellants and Cutrell for legal malpractice purposes. An attorney-client relationship exists in the traditional sense when "an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights." *Landis v. Hunt* (1992), 80 Ohio App.3d 662, 669, 610 N.E.2d 554, 558. The rendering of legal advice and legal services by an attorney and the client's reliance on the advice and services are therefore the benchmarks of an attorney-client relationship. The record is devoid of any evidence of such legal advice and legal services between appellants and Cutrell. Accordingly, there is nothing in the record to establish that an attorney-client relationship exists in the traditional sense between appellants and Cutrell.

Appellants argue, however, that an attorney-client relationship exists between them and Cutrell simply by virtue of Cutrell's representation of WPOA, of which appellants are members. We disagree. We have not found, and appellants have not established, a *per se* rule that by representing an incorporated association, its attorney necessarily and automatically enters into an attorney-client relationship with each of the association's members. We do not believe that representation of an incorporated association creates an attorney-client relationship with each member of the association, especially in light of EC 5–19 of the Code of Professional Responsibility, which provides:

"A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization."

In light of all of the foregoing, we therefore find that there is no attorney-client relationship between Cutrell and appellants. Pursuant to *Scholler*, 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, and *Simon*, 32 Ohio St.3d 74, 512 N.E.2d 636, however, it must next be determined whether appellants are in privity with WPOA.

Privity is defined as "[t]he connection or relation between two parties, each having a legally recognized interest in the same subject matter * * *; mutuality of interest * * *." Black's Law Dictionary (7 Ed.Rev.1999) 1217. For legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of

property or other interest. See *Arpadi v. First MSP Corp.* (Apr. 23, 1992), Cuyahoga App. No. 59939, unreported, 1992 WL 83836.

The rationale behind the privity requirement is clear:

"[T]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. * * *

"Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself." *Simon,* 32 Ohio St.3d at 77, 512 N.E.2d at 638.

In determining privity, the trial court must first examine the interest that the original attorney-client relationship was intended to protect and then compare it to the interest of the third person bringing suit for the alleged legal malpractice. See *Scholler,* 10 Ohio St.3d at 104, 10 OBR at 430–431, 462 N.E.2d at 163–164. Privity exists if the interest of the client is concurrent with the interest of the third person. *Id.*

Upon reviewing the record, we find that the trial court erred by granting summary judgment in favor of Cutrell regarding appellants' legal malpractice claim. It is well established that "[a] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." (Emphasis *sic.*) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

Cutrell filed a memorandum and a supplemental memorandum in support of his motion for summary judgment.[4] In the original memorandum, Cutrell essentially

---

4. As already noted, the trial court *sua sponte* converted Cutrell's original motion to dismiss into a motion for summary judgment. In his original motion to dismiss, with regard to privity, Cutrell merely states that "Plaintiffs' Complaint fails to state a claim upon which relief can be granted since Plaintiffs have no privity with the Defendant Cutrell[,]" and that "the

states that (1) WPOA is an incorporated association, (2) there is no evidence that an attorney-client relationship exists with "the property owners," and thus, (3) no conflict of interest exists. Attached to the memorandum are WPOA's articles of incorporation, WPOA's code of regulations, the restrictive covenants applying to the Lake Waynoka Property, and Cutrell's own affidavit. The affidavit merely states that Cutrell is the attorney of WPOA, which was incorporated in 1970 and which is governed by a nine-member board of trustees.

In his supplemental memorandum in support of his motion for summary judgment, Cutrell addresses appellants' legal malpractice claim and states in detail why there is no evidence of malicious conduct on his part while representing WPOA. With regard to privity, Cutrell merely states that "[i]t * * * has been established that there was no privity between the Plaintiffs' [*sic*] and the Defendant Cutrell[.]"

While Cutrell claims in his motion for summary judgment that appellants cannot prove their legal malpractice claim for lack of privity, Cutrell fails to "identif[y] those portions of the record that demonstrate the absence of a genuine issue of material fact" with regard to privity between appellants and WPOA. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d at 274. Cutrell does nothing more than make a conclusory assertion that appellants have no evidence to prove their legal malpractice claim. As a result, Cutrell, as the summary judgment moving party, has failed to satisfy his initial burden under Civ.R. 56 and *Dresher*, and his motion for summary judgment should have been denied.

In addition, it is clear from the record that Cutrell and the trial court each misapplied the law as to privity by concluding that the test of privity was whether Cutrell directly represented appellants, rather than whether appellants' interest in the subject matter of their lawsuit against the Water and Sewer District were in any way concurrent with an interest, if any, of WPOA. Until that question is answered, a question of material fact exists as to whether appellants are in privity to the Cutrell WPOA attorney-client relationship giving rise to a duty, which is the first element of legal malpractice. If no privity exists, in the absence of malicious conduct, there can be no malpractice claim. In granting summary judgment in favor of Cutrell under appellants' legal malpractice claim, the trial court specifically found that appellants had failed to establish that Cutrell had acted maliciously.

Because the trial court erred in applying the legal standard regarding privity and because Cutrell has failed to demonstrate the absence of a material question

---

case law clearly supports that the position by the Plaintiffs alleging legal malpractice and conflict of interest has no merit since the parties are not in privity[.]"

of fact on the correct legal basis, we find that Cutrell's motion for summary judgment regarding appellants' legal malpractice claim should have been denied.

The trial court therefore erred by granting summary judgment in favor of Cutrell regarding appellants' legal malpractice claim. Appellants' sole assignment of error, subissue two, is well taken and sustained. The trial court's judgment granting summary judgment in favor of Cutrell is affirmed as to appellants' motion to disqualify, reversed as to appellants' legal malpractice claim, and remanded to the trial court to consider the motion for summary judgment, applying the correct legal standard and giving the parties the opportunity to present any additional evidence as may be appropriate.

*Judgment affirmed in part, reversed in part and cause remanded.*

POWELL, P.J., and WALSH, J., concur.