OPINION
{¶ 1} This is an appeal from a summary judgment in a legal malpractice action brought by Plaintiff, Clifford Collett, in *Page 2 
his personal capacity and as executor of the estate of his deceased wife, Carol, against Defendants, Attorneys Lee Hohl and Jean Steigerwald.
 {¶ 2} In 1995, a mammogram indicated the presence of cells that have a high probability of malignancy in Carol Collett's left breast. Her obstetrician/gynecologist, Dr. Garber, referred Carol to a surgeon, Dr. Small, for consultation relative to a tissue biopsy. Dr. Small opined that the procedure would be risky, due to Carol's breast augmentation implant, but recommended that it be done. Carol subsequently declined the procedure because Dr. Small was not a participant in her health care plan.
 {¶ 3} The recommended biopsy was never performed. That may have, in part, been attributable to a mammogram that was performed the following year, in 1996, that was read as indicating that Carol's left breast was normal. Clifford Collett states in his appellate brief that a wrongful death action has been filed against the radiologist who read the 1996 mammogram.
 {¶ 4} On December 7, 2000, the Colletts learned that Carol had cancer in her left breast and that the cancer had spread to her lymph nodes. In early 2001, the Colletts contacted Attorney Hohl regarding a potential medical malpractice claim *Page 3 
against Carol's physicians for failing to diagnose Carol's cancer at an earlier stage. Because medical malpractice claims were outside of Hohl's area of expertise, Hohl contacted another attorney, Jean Steigerwald, regarding potential representation of the Colletts.
 {¶ 5} The Colletts met with Steigerwald at Hohl's office on February 6, 2001. Steigerwald had used Hohl's office in the past to meet with other prospective clients, because Hohl's office was a more convenient location for some clients than Steigerwald's downtown Dayton office. During the February 6, 2001 meeting, Steigerwald presented the Colletts with a written fee agreement captioned "Co-Counsel Fee Agreement." Carol Collett and Steigerwald signed the Co-Counsel Agreement. There was a blank for Hohl's signature, but apparently he did not sign the Agreement.
 {¶ 6} In November of 2001, Steigerwald sent 180-day letters to extend the statute of limitations to certain medical providers that Steigerwald had identified as potential defendants after a review of Carol Collett's medical records. On May 2, 2002, Steigerwald submitted Carol Collett's medical records to Michael Johnson, a certified legal nurse consultant, for review. Steigerwald also filed a Complaint on May 3, 2002 in common pleas court on behalf of the Colletts *Page 4 
against Dr. Robert A. Little, Oak Creek Obstetrics/Gynecology, Inc., Beavercreek Medical Imaging, and Midstates Radiology Consultants, Inc.
 {¶ 7} In a written report dated May 10, 2002, Nurse Johnson opined that Carol Collett's medical malpractice claim was unlikely to succeed based, in part, on Carol's failure to undergo the biopsy procedure that her doctors had recommended and the difficulty in proving proximate causation. In an Addendum to his report, Nurse Johnson indicated that certain literature caused him to question several of his conclusions, and he identified potential areas of further research.
 {¶ 8} On May 31, 2002, Steigerwald met with Carol to discuss the medical malpractice case and Nurse Johnson's report. Clifford Collett did not attend this meeting. According to Steigerwald, she believes that she shared Nurse Johnson's reports with Carol at the May 31, 2002 meeting. Steigerwald recommended to Carol that the Colletts not proceed with the medical malpractice action because of the problems identified by Nurse Johnson. Steigerwald explained that she would not represent the Colletts should they decide to pursue the medical malpractice action further.
 {¶ 9} Based on Steigerwald's recommendation, the Colletts agreed to voluntarily dismiss the medical malpractice action. *Page 5 
On June 5, 2002, Steigerwald sent a copy of the Notice of Voluntary Dismissal to the Colletts, and explained that they could re-file the action within one year of the date of dismissal. On July 9, 2002, Steigerwald sent a check to the Colletts refunding the remaining balance of a deposit she had collected from them, and stated in an attached letter that Steigerwald intended to close her file on the matter. On January 25, 2005, Carol Collett died. In March of 2005, Clifford Collett met with Attorney John Huber for the purpose of settling his wife's estate. Huber reviewed Steigerwald's files to determine whether a wrongful death action should be brought against any of Carol Collett's medical providers. After reviewing Steigerwald's files, Huber advised Clifford Collett that Steigerwald and Hohl may have committed legal malpractice while representing the Colletts.
 {¶ 10} On January 25, 2006, Clifford Collett, personally and as executor of Carol Collett's estate, commenced a legal malpractice action against Hohl and Steigerwald. Hohl and Steigerwald filed Answers to the Complaint, which included statute of limitations defenses. Steigerwald filed a motion for summary judgment on the statute of limitations defense. Hohl filed a motion for summary judgment on that same basis and in addition argued that he did not have an attorney-client *Page 6 
relationship with either Carol or Clifford Collett.
 {¶ 11} While the motions for summary judgment were pending, the trial court granted leave to Clifford Collett to file an amended complaint, which he did on August 11, 2006. Hohl and Steigerwald filed Answers to the Amended Complaint, which included statute of limitations defenses. The trial court ordered discovery, but limited any discovery to the statute of limitations issue the Defendant's motions for summary judgment presented. Hohl, Steigerwald, and Clifford Collett were deposed.
 {¶ 12} On January 22, 2007, the trial court granted Steigerwald and Hohl's motions for summary judgment. Clifford Collett filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 13} "THE TRIAL COURT ERRED IN SUSTAINING DEFENDANTS? MOTIONS FOR SUMMARY JUDGMENT BASED UPON THE EXPIRATION OF THE STATUTE OF LIMITATIONS."
 {¶ 14} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio 3 App.3d 378, *Page 7 
383, 701 N.E.2d 1023, citing Dupler v. Mansfield JournalCo. (1980), 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187. Therefore, the trial court's decision is not granted deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Similarly, the determination of the date a cause of action for legal malpractice accrues is a question of law reviewed de novo by an appellate court. Cicchini v. Streza,160 Ohio App.3d 189, 2005-Ohio-1492, _17, citing Whitaker v. Rear (1997),123 Ohio App.3d 413, 420, 704 N.E.2d 317.
 {¶ 15} R.C. 2305.11(A) states: "An action for malpractice . . . shall be commenced within one year after the cause of action accrued. . . ." "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. Calfee,Halter Griswold (1989), 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (citation omitted). "The party asserting the statute-of-limitations defense has the burden of identifying the date of the `cognizable event.'" *Page 8 Werts v. Penn, 164 Ohio App.3d 505, 2005-Ohio-6532, _11 (citations omitted).
 {¶ 16} "[C]onstructive knowledge of facts, rather than actual
knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." Flowers v. Walker (1992),63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (emphasis in original) (citations omitted). Moreover, the injured person does not have to "be aware of the full extent of the injury before there is a cognizable event. Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person" of the legal malpractice. Zimmie, 43 Ohio St.3d at 58 (citation omitted). Often, a cognizable event will occur when the client learns of an adverse decision during litigation. Koerber v. Levey Gruhin, Summit App. No. 21730, 2004-Ohio-3085, _36; Vagianos v. Halpern (Dec. 14, 2000), Cuyahoga App. No. 76408.
 {¶ 17} "[F]or the purposes of determining the accrual date of R.C.2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the *Page 9 
injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury." Omni-Food Fashion,Inc. v. Smith (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941.
 {¶ 18} The alleged breaches of the Defendants' duties of care, the injury the Colletts suffered as a proximate result, and Collett's theory of his claim for relief, are set out in the following two paragraphs of his Amended Complaint:
 {¶ 19} "28. Both attorneys Steigerwald and Hohl had a duty to timely and properly investigate the Colletts' claims; to insure that all necessary medical documents had been obtained; to have Carol's mammogram films reviewed by a qualified expert; to take necessary action to preserve and protect any causes of action the Colletts possessed against potential defendants; to disclose to the Colletts that they had failed to preserve their claims against Dr. Garber and the radiologist who read the 1996 mammogram; and to advise the Colletts on the manner to preserve their claims against Dr. Small. Neither attorney Steigerwald nor attorney Hohl fulfilled their respective obligations to their clients and *Page 10 
thus were negligent in their legal representation of the Colletts.
 {¶ 20} "29. As a direct and proximate result of the negligence of attorneys Steigerwald and Hohl, the medical malpractice claims which the Colletts possessed against Drs. Garber and Small and those individuals who read any of Carol's mammograms were not protected and those claims are now barred by the statute of limitations. These attorney-defendants are now liable for the full extent of damages which the Colletts would have recovered against Dr. Garber, Dr. Small and/or Carol's radiologists, including damages for medical expenses, loss of income, conscious pain and suffering, and loss of consortium." (Dkt. 24).
 {¶ 21} In granting the Defendants' motions, the trial court wrote:
 {¶ 22} "On May 31, 2002, one year and four months after Steigerwald was retained, Steigerwald shared the results of her investigation with Mrs. Collett and indicated that she would no longer represent Mrs. Collett. Since there is no evidence that Steigerwald hid information from Mrs. Collett or otherwise committed fraud, the Court believes that the presentation of Steigerwald's investigatory findings on this date was sufficient to put a reasonable person on notice that *Page 11 
the voluntary dismissal of the medical negligence claim could be related to an inadequate and untimely investigation of the claim. Furthermore, a reasonable person with a terminal illness and whose testimony was not taken prior to the termination of the attorney-client relationship, has notice on the date the relationship terminates to investigate whether the failure to perpetuate the person's testimony was the result of a questionable legal practice. While Mr. Collett did not have specific actual knowledge of any alleged improper act by Steigerwald until he was advised by Huber in March 2005, the Colletts had constructive knowledge of facts which would put a reasonable person on notice to inquire about malpractice regarding Steigerwald's investigation and failure to perpetuate Mrs. Collett's testimony on May 31, 2002.Constructive knowledge of facts rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. (Emphasis in original.) Flowers v.Walker (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.
 {¶ 23} "Plaintiffs allege that Steigerwald failed to adhere to the minimum accepted standards of the practice of law by allowing the one-year statute of limitations period to lapse against the physicians who provided care in 1995 and 1996. *Page 12 
Drs. Small and Garber were the physicians treating Mrs. Collett in 1995 and 1996 when increased microcalcifications were seen in her left breast, in the same position she was diagnosed with cancer in 2000, and when Radiologist Dr. Orcutt, recommended a tissue sampling to evaluate for cancer. Mr. and Mrs. Collett, aware that Dr. Small refrained from performing a biopsy because of his concern about the underlying breast implants, should have discovered that they were not pursuing a claim against potentially liable Defendants on May 3, 2002 when the complaint was filed and Mrs. Collett's 1995 and 1996 doctors were not named as defendants. Or, at the latest on July 9, 2002 when the Colletts were notified by mail that they were not pursuing a medical negligence claim at all.
 {¶ 24} "It is undisputed that the attorney-client relationship between the Colletts and Steigerwald was terminated on either May 31, 2002 when Steigerwald told Mrs. Collett she would no longer be representing her, or on July 9, 2002, the date of the last correspondence in which Steigerwald stated, `I will be closing your file with this office.' Since the cognizable event for each allegation of legal malpractice occurred on or prior to these dates and the statute of limitations for bringing a legal malpractice claim has run *Page 13 
under either date, it is irrelevant for the Court to determine on which of these dates the attorney-client relationship terminated.
 {¶ 25} "Because Mr. Collett has not filed his complaint within the applicable one-year statute of limitations, Steigerwald's motion for summary judgment is hereby sustained." (Dkt 42, p. 8-9).
 {¶ 26} We agree with the trial court's analysis, but not with its particular application of that analysis.
 {¶ 27} Collett's claim for legal malpractice is based on the contention that Carol's attorneys negligently failed to prosecute her medical malpractice claims against physicians who treated Carol in 1995-1996, and that as a result those claims are now barred by the statue of limitations. However, when Carol was given a copy of the complaint that Steigerwald filed, in which her 1995-1996 physicians were not named as defendants, Carol knew or should have known that Steigerwald had not prosecuted malpractice claims against those physicians. That, in our view, was the cognizable event that put Carol on notice that Steigerwald's omission proximately resulted in an injury to Carol's legal interests with respect to her claims against the omitted physicians. The discovery rule contemplates notice of an injury to the client's legal *Page 14 
interests, not the particular breach of the attorney's duty of care that proximately caused the injury.
 {¶ 28} The trial court, instead, viewed the May 31, 2002 meeting between Carol and Steigerwald as the cognizable event for purposes of Carol's discovery of her legal malpractice claim. In that meeting, Steigerwald explained her reasons for not pursuing medical malpractice claims against any of Carol's physicians. Collett argues that the explanation Steigerwald gave, that in her opinion, any medical malpractice claims Carol might bring were unlikely to succeed, operated to conceal Steigerwald's breach of her duty of care in allowing the statue of limitations on claims against the 1995-1996 physicians to expire. However, even if Steigerwald's explanations had that effect, they could not defeat the operation of the rule of discovery unless the substance of the explanations Steigerwald gave was fraudulent. There is no proof that they were. Thus, with respect to the discovery question, the May 31, 2002 meeting is a red herring.
 {¶ 29} Steigerwald was retained by the Colletts to represent their legal interests in prosecuting medical malpractice claims against physicians who had treated Carol and negligently failed to diagnose her breast cancer. Carol was put on notice by the complaint Steigerwald subsequently *Page 15 
filed that Steigerwald had not joined certain of her physicians in that action for medical malpractice. From that fact, Carol knew or reasonably should have known that her right to relief against those physicians was adversely affected by Steigerwald's representation. Therefore the applicable statute of limitations on the Colletts' claims for legal malpractice against Steigerwald and Hohl began to run beginning on June 5, 2002, when the legal representation subsequently terminated. The Colletts were required to commence any action for legal malpractice within the following year. They did not, and so the claims for relief that were subsequently filed in the present care are barred. The fact that the Colletts may have been persuaded to not act by the non-fraudulent explanations Steigerwald gave Carol, as well as the terminal illness Carol faced, does not relieve them of the burden the statue of limitations imposes.
 {¶ 30} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 31} "THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT HOHL'S MOTION FOR SUMMARY JUDGMENT BASED UPON NON-EXISTENCE OF THE ATTORNEY-CLIENT RELATIONSHIP."
 {¶ 32} An attorney-client relationship exists in the traditional sense when "an attorney advises others as to their *Page 16 
legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights." Landis v.Hunt (1992), 80 Ohio App.3d 662, 669, 610 N.E.2d 554. "The rendering of legal advice and legal services by an attorney and the client's reliance on the advice and services are therefore the benchmarks of an attorney-client relationship." Sayyah v. Cutrell (2001),143 Ohio App.3d 102, 111, 757 N.E.2d 779.
 {¶ 33} An attorney-client relationship is essentially a contract to perform services. The contract can be written or oral and express or implied. 6 Ohio Jur. 3d Sec. 127, Attorneys At Law, p. 555. "While it is true that an attorney-client relationship may be formed by the express terms of a contract, it `can also be formed by implication based on conduct of the lawyer and expectations of the client.'" Cuyahoga Cty.Bar Assoc. v. Hardiman, 100 Ohio St.3d 260, 2003-Ohio-5596, _10 (citation omitted). "The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client." Id. (citation omitted).
 {¶ 34} The trial court found (Dkt. #42) that:
 {¶ 35} "In the present case, there is no genuine issue of *Page 17 
fact as to whether Plaintiff believed that an attorney-client relationship existed between Plaintiff, Plaintiff's wife and Defendant Hohl. Plaintiff's deposition states: `Q: * * * What was your understanding of Mr. Hohl's role in this case? A: Well, I thought he just set up the meeting because Ms. Steigerwald had more experience in malpractice suits and we were using his office instead of going downtown to Jean Steigerwald's office. * * * Q: Did you believe that he was going to remain actively involved in the prosecution of the claim or the investigation of the claim in any way? A: Not that I was aware of. I thought it was more a referral thing than anything else.' (Collett Depo. p. 57-58.) Plaintiff further testified that he never contacted Defendant Hohl to inquire as to the status of the medical negligence claim nor did he receive correspondence from Defendant Hohl regarding the claim. (Collett Depo. p. 56.) Defendant Hohl is entitled to judgment as a matter of law on Plaintiff's legal malpractice claim because Plaintiff has failed to demonstrate that Plaintiff hired Hohl to do anything other than refer Plaintiffs to a malpractice attorney, which Hohl did."
 {¶ 36} It is undisputed that Hohl played no part in investigating or pursuing the medical malpractice action. Hohl's actions were limited to referring the Colletts to *Page 18 
Steigerwald and allowing Steigerwald to use his office to meet with the Colletts in order to provide a more convenient location for the Colletts. We must keep in mind that the question of whether an attorney-client relationship exists turns largely on the belief of the client. Clifford Collett made it clear at his deposition that he did not consider Hohl his or his wife's attorney for purposes of investigating and pursuing the medical malpractice claim. Rather, Clifford Collett viewed Hohl as an attorney who referred the Colletts to Steigerwald for representation.
 {¶ 37} Upon these facts, reasonable minds could only conclude that Hohl and the Colletts did not have an attorney-client relationship. Therefore, the trial court properly granted summary judgment for Hohl on this issue. The second assignment of error is overruled.
 {¶ 38} Having overruled the errors assigned, we will affirm the judgment from which the appeal was taken.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1