**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0282n.06

**Case No. 18-3924**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANTHONY DOMENIC REO, | ) | |
| | ) | **FILED**<br>May 30, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff - Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PALMER ADMINISTRATIVE SERVICES; | ) | COURT FOR THE NORTHERN |
| MICHAEL SHAFTEL, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants - Appellees. | ) | |
| | ) | |

O P I N I O N

BEFORE:     COLE, Chief Judge; SILER and CLAY, Circuit Judges.

COLE, Chief Judge.  In 2016, Bryan Reo threatened to file a complaint against Appellee Palmer Administrative Services, Inc. ("Palmer") for unauthorized telemarketing calls under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and sought both damages and injunctive relief.  Rather than litigate the case, the parties agreed to settle the matter, which culminated in the execution of a settlement agreement.  That agreement waived any of Bryan's claims against Palmer up until the day of execution, August 26, 2016, and provided that any future disputes would be submitted to arbitration.

Despite this agreement, Bryan, an attorney, brought another TCPA action against Palmer and Michael Shaftel[1] in August 2018, this time on behalf of his father, Anthony Reo, again alleging unauthorized telemarketing calls. The 2018 complaint alleged, *inter alia*, violations of the TCPA and sought damages and an injunction enjoining Defendants from contacting Plaintiff in the future.

Because Bryan and his father live at the same address and utilize the same landline telephone number, Palmer moved to compel arbitration pursuant to the 2016 settlement agreement, arguing that Anthony was in contractual privity with Bryan for the purposes of the pending claims. The district court held that the Reos were in fact in privity and granted the motion:

> First, it appears to the Court that the Reos and Palmer agreed to resolve any and all future disputes and claims arising between them, other than those arising out of the alleged breach of the Settlement Agreement, by submitting such dispute to binding arbitration before a single arbitrator to take place in Philadelphia, Pennsylvania. Second, the claims asserted in this case fall within the scope of the Settlement Agreement because they involve telemarketing calls made to the same landline at the same address in overlapping periods of time. Third, Congress has not stated that TCPA claims are nonarbitrable. Fourth, although Defendants ask the Court to stay the case pending arbitration, the Court declines to do so. The Reos are utilizing enough of the resources of federal courts in the Northern District of Ohio with their TCPA cases–not to mention the resources of the Lake County Common Pleas Court.

(Order, R. 6, PageID 163–68.) The court thus granted Palmer's motion and dismissed the case without prejudice. (*Id.* at 168 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).) Anthony timely appealed.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

---

[1] Although it is not clear from the 2018 complaint or the parties' briefing, it appears that Michael Shaftel is an employee or officer of Palmer. (2018 Compl., R. 1-3, PageID 10 ("During the call from 9/8/17 an employee of Defendants [sic] Palmer, when asked 'do you know Michael Shaftel?' answered, 'Yes, he is the boss, I make calls for him.'").)

agreement for arbitration may petition . . . for an order" compelling arbitration. 9 U.S.C. § 4. This court reviews de novo a district court's decision to compel arbitration pursuant to the FAA. *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 487 (6th Cir. 2001) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). We also note, as the district court did, that there is a "strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714 (citations omitted).

When considering a motion to compel arbitration under the FAA, we apply a four-pronged test:

> [F]irst, [a court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (citation omitted).

Here, only the first prong is at issue. It is undisputed that *Bryan* and Palmer agreed to arbitrate, but the question is whether Anthony also is subject to the arbitration provision. The answer to that question depends on whether Anthony and Bryan are in privity with one another under Ohio law. *See Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 603 (6th Cir. 2013) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (en banc)).

To establish privity, Ohio law "does not require a contractual relationship." *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (citing *Brown v. Dayton*, 89 Ohio St. 3d 245, 248 (Ohio 2000)). Instead, Ohio courts have defined privity as simply "[t]he connection or relation between two parties, each having a legally recognized interest

in the same subject matter" and "mutuality of interest." *Sayyah v. Cutrell*, 143 Ohio App. 3d 102, 111 (Ohio Ct. App. 2001) (quoting Black's Law Dictionary (7 Ed. Rev. 1999)); *see also O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 61 (Ohio 2007) (noting that "[a] 'mutuality of interest, including an identity of desired result,' might also support a finding of privity") (quoting *Brown*, 89 Ohio St. 3d at 248). Both parties agree that "[p]rivity does not equate to identical interests; rather, privity exists when the interests of one adequately represent[] the interests of another." *See Carolina Cas. Ins. Co. v. Sharp*, 940 F. Supp. 2d 569, 574 (N.D. Ohio 2013) (citing *Sayyah*, 143 Ohio App. 3d at 112).

The Reos argue that although Anthony and Bryan "happen to reside at the same residence, are family members, happen to share the same surname, and happen to be harassed by the same defendants who called the same telephone number[, that] does not result in a mutuality of interests to such an extent that privity of contract can be construed . . . ." (Appellant Br. 8.) Instead, Anthony argues that the Reos had different desired results—Bryan's desired result in his 2016 action was to receive financial compensation for the alleged harassing calls he received; whereas the desired outcome in this action is for Anthony to receive financial compensation for the harassing calls he received, and thus there cannot be mutuality.

Like the district court, we disagree. Bryan and Anthony share an address and a telephone landline, and both seek to prevent future calls from Palmer. In Ohio, privity does not require identical interests—it just requires that the interests of one party adequately represent the interests of another. *See Sharp*, 940 F. Supp. 2d at 574. Anthony and Bryan both sought relief for an alleged injury stemming from calls to the same *shared*, residential landline. Critically, Anthony's complaint requests not only damages, but also injunctive relief, just as Bryan's 2016 proposed

complaint sought.  Thus, the injunctive relief would benefit Bryan and Anthony equally and in the same way, and Bryan's interests can be said to "adequately represent" those of Anthony.

In any event, the liberal federal policy favoring arbitration supports the district court's decision.  In light of the fact that "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," the district court was correct to compel arbitration.  *Stout*, 228 F.3d at 714.  For those reasons, we affirm the decision of the district court.