OPINION
{¶ 1} Kevin Neighbors appeals from a judgment of the Butler County Court of Common Pleas, which granted summary judgment to attorney Paris K. Ellis, on Neighbor's claims of legal malpractice and negligent hiring, supervision, and retention. For the following reasons, the judgment will be reversed and the case remanded for further proceedings.
 I. {¶ 2} Construing the record in the light most favorable to Neighbors, the record *Page 2 
supports the following facts:
 {¶ 3} On October 27, 2001, Kevin Neighbors was cutting crown molding with a Hitachi Model C15FB miter saw as part of a construction project. Neighbors used two plastic sawhorses manufactured by Zag Industries and a sheet of plywood as a base for the miter saw. As he was cutting the molding, one of the sawhorses collapsed, and Neighbors sustained a serious injury to his arm, which required surgery. Neighbors was unable to work for six or seven months, the use of his arm remains impaired, and Neighbors continues to be in pain.
 {¶ 4} Between 1999 and 2003, Paris Ellis provided legal services to Neighbors on a number of separate criminal matters, including a felony drug charge, two driving under the influence charges, and one driving on a suspended license charge. Although Ellis indicated that he requires a signed contract before performing legal services, Ellis did not always require Neighbors to sign a contract for his services. When Neighbors asked Ellis to represent him, Ellis always replied, "I will take care of it." Ellis performed legal work for Neighbors on his criminal cases for a flat fee, which Neighbors paid in cash. Neighbors was satisfied with Ellis' representation for the criminal matters.
 {¶ 5} Within ten days of the accident with the miter saw, Neighbors contacted Ellis to discuss a personal injury lawsuit. Ellis responded that he would take care of it. Neighbors did not receive an engagement letter from Ellis, and he did not sign a contract. However, the two agreed to a contingency fee of no more than 30 percent. Neighbors understood that Ellis was going to consult with other attorneys to help him with the case.
 {¶ 6} While at a court date for an unrelated misdemeanor traffic matter, Neighbors again discussed the accident with Ellis. Ellis again indicated that he would represent Neighbors and he told Neighbors to bring the sawhorse to his office. This conversation was *Page 3 
overheard by Ewell Burke. Neighbors subsequently brought the sawhorse to Ellis' office.
 {¶ 7} Neighbors contacted Ellis every two months to check on the status of the case. As with his criminal matters, Neighbors primarily spoke with Ellis' paralegal, Kathy Paxitzis, now known as Kathy Jackson. When Neighbors began to receive bills from his medical providers, Ellis advised him to send the bills to his office. Ellis stated that he would put them in a file and delay collection until the matter was resolved. Neighbors thus told his medical providers to send the bills to Ellis' office.
 {¶ 8} In June 2002, Jackson drafted correspondence to Rich 
Associates, a collection agency that was working for Ortho Sports Medical Consultants, informing the agency that Ellis represented Neighbors "for injuries sustained in an [sic] personal injury action" and that "when, and if, recovery of incurred expenses is made on behalf of our client, the amount of your bill referenced above will be protected."
 {¶ 9} In October 2003, Neighbors was concerned that no lawsuit had been filed. He knew, based on a conversation with Ellis, that there was a two-year statute of limitations. On October 25 or 26, Neighbors contacted Ellis' firm to ask about the case. Jackson indicated that there was paperwork for filing a complaint that she could get off of the internet for $400. Neighbors met Jackson at the Broken Spoke Saloon in Middletown that evening and received an envelope which contained a form complaint and other papers. On October 27, 2003, Neighbors took the papers to his sister, Gail Back, who assisted him in drafting a complaint.
 {¶ 10} Neighbors filed a complaint against Zag Industries and Hitachi Powers Tools at 3:51 p.m. on October 28, 2003, in Butler Case No. CV2003-10-2916. On August 6, 2004, the action was dismissed with prejudice because the complaint was untimely.
 {¶ 11} On September 24, 2004, Neighbors brought suit against Ellis, alleging legal malpractice, negligent supervision, and negligent hiring and retention in Butler Case *Page 4 
No. CV2004-09-2875. Neighbors voluntarily dismissed this action, and he refiled a complaint with the same allegations on December 1, 2006. In February 2007, Ellis moved for summary judgment. In his motion, Ellis presented a different version of events, denying that he had agreed to represent Neighbors in a products liability or personal injury action. Jackson stated in an affidavit that she had informed Neighbors that Ellis did not handle products liability cases and she gave Neighbors the names of other attorneys that handle such matters. Jackson further stated that, when Neighbors told her he was drafting his own complaint, she merely suggested that he could search the internet for form complaints.
 {¶ 12} The trial court granted Ellis' motion for summary judgment, reasoning that there were no genuine issues of material fact that no attorney-client relationship was formed between Ellis and Neighbors and that Ellis was not negligent in hiring, supervising, and retaining Jackson.
 {¶ 13} Neighbors appeals, raising two assignments of error. Ellis has raised two "cross-assignments of error," which are more properly labeled alternative bases to affirm the judgment. App. R. 3(C)(2).
 II. {¶ 14} We review the appropriateness of summary judgment de novo and follow the standard set forth in Civ. R. 56. Koos v. Cent. Ohio Cellular,Inc. (1994), 94 Ohio App.3d 579, 588. "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v.Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389;Richardson v. Pyramid Hill Sculpture Park, Butler App. No. CA2006-08-196, 2007-Ohio-5895, 5 ¶ 6. *Page 5 
 {¶ 15} Neighbors' first assignment of error states:
 {¶ 16} "WHETHER THE LOWER COURT ERRED BY FINDING THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF AN ATTORNEY-CLIENT RELATIONSHIP BETWEEN NEIGHBORS AND ELLIS, PARIS ELLIS."
 {¶ 17} In order to establish a claim of legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259;Krahn v. Kinney (1989), 43 Ohio St.3d 103, syllabus; Hover v.O'Hara, Warren App. No. CA2006-06-77, 2007-Ohio-3614, ¶ 16.
 {¶ 18} On appeal, Neighbors claims that the trial court erred in finding that no genuine issue of material fact existed as to the existence of an attorney-client relationship. In support of the judgment, Ellis argues that no attorney-client relationship existed and that Neighbors' preparation and filing of a pro se complaint was a superceding cause of Neighbors' damages. Ellis further contends that Neighbors failed to present evidence of a causal connection between his alleged malpractice and Neighbors' damages.
 {¶ 19} "An attorney-client relationship exists in the traditional sense when `an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights.' Landis v. Hunt (1992),80 Ohio App.3d 662, 669. `The rendering of legal advice and legal services by an attorney and the client's reliance on the advice and services are therefore the benchmarks of an attorney-client relationship.' Sayyah v.Cutrell (2001), 143 Ohio App.3d 102, 111.
 {¶ 20} "An attorney-client relationship is essentially a contract to perform services. The contract can be written or oral and express or implied. 6 Ohio Jur.3d Sec. 127, *Page 6 
Attorneys At Law, p. 555. `While it is true that an attorney-client relationship may be formed by the express terms of a contract, it "can also be formed by implication based on conduct of the lawyer and expectations of the client.'" Cuyahoga Cty. Bar Assoc. v. Hardiman,100 Ohio St.3d 260, 2003-Ohio-5596, ¶ 10 (citation omitted). `The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client.' Id. (citation omitted)." Collett v. Steigerwald, Montgomery App. No. 22028,2007-Ohio-6261, ¶ 32-33.
 {¶ 21} In finding that there was no genuine issue of material fact that no attorney-client relationship existed, the trial court stated:
 {¶ 22} "In the present case, other than Plaintiff's subjective beliefs, there is no evidence that Defendant ever believed he was representing Plaintiff in the underlying action. In addition, there is no communication, oral or written, evidencing an attorney-client relationship between Plaintiff and Defendant. Plaintiff's belief that an attorney-client relationship existed is not reasonable."
 {¶ 23} In our view, the trial court failed to construe the evidence in Neighbors' favor when it reached this conclusion. As stated above, Neighbors stated in his affidavit and his deposition that he first discussed his injuries from the saw and sawhorse with Ellis approximately ten days after the accident. He also stated that he discussed the accident with Ellis at a subsequent court appearance in an unrelated matter. Neighbors testified that Ellis told him that he would "take care of it," just as Ellis had stated when agreeing to handle criminal matters for Neighbors. Ewell Burke supported Neighbors' contention that Ellis had orally agreed to handle the personal injury action. Burke stated in his affidavit:
 {¶ 24} "At this court date I heard a conversation between Paris Ellis and Kevin Neighbors. During this conversation, Paris told Kevin that he would represent him on the *Page 7 
case involving the injuries to his arm. He also told Kevin to bring the saw horse to his office."
 {¶ 25} Neighbors stated in his affidavit that he took the saw horse to Ellis' office and had medical bills sent to Ellis at Ellis' recommendation. Although Ellis denied knowledge of the letter of Roth Associates and Neighbors did not know of the letter at the time, the existence of the letter supports an inference that Ellis had agreed to represent Neighbors. Although Ellis denied agreeing to represent Neighbors on the personal injury matter and the affidavit of Jackson supports that assertion, Neighbors' evidence raises a question of fact as to the veracity of those statements.
 {¶ 26} Moreover, the lack of an engagement letter or contract between Ellis and Neighbors does not preclude the existence of an attorney-client relationship. Hardiman. Although Ellis testified that his staff was "not to open a file, either in the computer or a paper file, until they had a signed contract," Neighbors testified that he did not always sign a contract with Ellis regarding the criminal matters.
 {¶ 27} In his motion for summary judgment, Ellis emphasized Jackson's statements that she did not open a file concerning Neighbor's product liability matter; that she told Neighbors that Ellis did not handle cases involving products liability and gave him the names of other attorneys who handled those matters; and that she merely suggested to Neighbors that he could search the internet for assistance drafting his pro se complaint. Jackson stated that Neighbors never spoke to her about Ellis representing him concerning an alleged products liability claim and that Ellis did not indicate to her that he was representing Neighbors regarding that claim. Ellis also submitted an affidavit by James Montgomery, an attorney who represented Hitachi in Neighbors' action against Hitachi and Zag Industries. Montgomery stated that, during his involvement in that litigation, Neighbors never mentioned that he was represented by counsel. *Page 8 
 {¶ 28} Although Jackson's affidavit refutes Neighbors' claim that he had an attorney-client relationship with Ellis regarding the injury to his arm, it does not establish the absence of such a relationship, in light of Neighbors' contradictory evidence. Likewise, considering that Montgomery's affidavit does not indicate when he became involved with Neighbors' litigation against Hitachi, Montgomery's affidavit is only marginally relevant to whether Ellis had previously agreed to represent Neighbors in that action.
 {¶ 29} In sum, construing the evidence in the light most favorable to Neighbors, the non-moving party, the trial court erred in finding that there were no genuine issues of material fact as to the existence of an attorney-client relationship.
 {¶ 30} Ellis asserts that he nevertheless was entitled to summary judgment because Neighbors' conduct in preparing and filing his own complaint was an intervening, superseding cause of his alleged damages. We disagree.
 {¶ 31} Neighbors' damages stem from Ellis' alleged failure to timely file a lawsuit against Zag and Hitachi and to prosecute that matter. In his affidavit, Neighbors stated that he eventually was forced to file the lawsuit himself because he believed that Ellis was going to miss the statute of limitations deadline. Neighbors indicated that he contacted Jackson on October 25 or 26, 2003 — within days of the running of the statute of limitations — and asked her what he should do. Jackson then gave Neighbors materials to file a pro se complaint. Neighbors stated that "[e]ven though I filed the lawsuit myself, I still believed that Paris was going to represent me because he never told me that he wanted to stop representing me. I only filed the lawsuit out of fear that he was going to miss the statute of limitations and not because I did not want him to represent me."
 {¶ 32} Although Neighbors admittedly filed a pro se complaint, Neighbors' affidavit supports a conclusion that he was not terminating the alleged attorney-client relationship but *Page 9 
was merely trying to protect his interests in light of indications that Ellis might not do so. Moreover, there is no evidence that Ellis understood that Neighbors was terminating the representation and that Ellis would have filed a timely complaint but for Neighbors' statements to Jackson that he was considering filing a pro se complaint. In short, the record does not establish that Neighbors' conduct in filing his own complaint terminated the alleged attorney-client relationship.
 {¶ 33} Ellis further argues that Neighbors failed to present evidence to establish a causal connection between his alleged negligence and Neighbors' damages. Neighbors alleged in his complaint that Ellis' malpractice caused the loss of compensatory damages, costs and interest, as well as emotional distress and uncompensated pain and suffering.
 {¶ 34} In addressing causation in a legal malpractice action, the Supreme Court of Ohio has expressly rejected the "rule of thumb" that a plaintiff prove, in order to establish damages, that he would have been successful in the underlying matter giving rise to litigation.Vahila, 77 Ohio St.3d at 426. The Court quoted extensively from Note, The Standard of Proof of Causation in Legal Malpractice Cases (1978), 63 Cornell L.Rev. 666, 670-671, which stated:
 {¶ 35} "A standard of proof that requires a plaintiff to prove to a virtual certainty that, but for the defendant's negligence, the plaintiff would have prevailed in the underlying action, in effect immunizes most negligent attorneys from liability. No matter how outrageous and morally reprehensible the attorney's behavior may have been, if minimal doubt exists as to the outcome in the original action, the plaintiff may not recover in the malpractice action. Except in those rare instances where the initial action was a `sure thing,' the certainty requirement protects attorneys from liability for their negligence.
 {¶ 36} "A strict `but for' test also ignores settlement opportunities lost due to the *Page 10 
attorney's negligence. The test focuses on whether the client would have won in the original action. A high standard of proof of causation encourages courts' tendencies to exclude evidence about settlement as too remote and speculative. The standard therefore excludes consideration of the most common form of client recovery.
 {¶ 37} "In addition, stringent standards of proving `but for' require the plaintiff to conduct a `trial within a trial' to show the validity of his underlying claim. A full, theoretically complete reconstruction of the original trial would require evidence about such matters as the size of jury verdicts in the original jurisdiction. For example, an experienced attorney could testify that juries in that jurisdiction typically award verdicts of x dollars in similar cases. But such evidence is too remote and speculative; the new fact-finder must try the merits of both the malpractice suit and the underlying claim to make an independent determination of the damage award. The cost and complexity of such a proceeding may well discourage the few plaintiffs otherwise willing to pursue the slim chance of success.
 {¶ 38} "Other problems await those who do proceed with the `trial within a trial.' For example, the attorney in the original action may have negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim — and the passage of time has precluded obtaining that information — the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation." See Vahila, 77 Ohio St.3d at 426-27.
 {¶ 39} The supreme court thus reiterated:
 {¶ 40} "Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. See Note at 671; and Krahn,43 Ohio St.3d at 106, 538 N.E. 2d at 1062. However, we cannot endorse a *Page 11 
blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim." Id. at 428.
 {¶ 41} Upon review of the record, Neighbors provided sufficient evidence of a causal connection between Ellis' failure to file a complaint and pursue litigation against Hitachi and Zag and Neighbors' damages. In response to Ellis' motion for summary judgment, Neighbors submitted the expert report of Thomas R. Huston, who concluded to a reasonable degree of engineering certainty, that the sawhorse was defective. Huston stated:
 {¶ 42} "At the time of the incident, the saw horse was being used in an ordinary and foreseeable manner. When the incident occurred, the saw horse we being used to support the Hitachi miter saw which weighed about 58 pounds. Recall, a pair of the saw horses was rated to hold 1,000 pounds. Hence, the subject saw horse failed under a load well below its rated capacity. There was also a lack of redundancy in the design of the saw horse. Indeed, the failure of a single pin was sufficient to cause the saw horse to lose its structural integrity. There was also a false sense [of] security associated with the subject saw horse. Before the incident, there would not have been any readily apparent visual cues that the saw horse was about to fail. In short, an individual using the saw horse would become accustomed to the saw horse being in an open configuration and would not anticipate that the saw horse was going to collapse.
 {¶ 43} "In conclusion, it is my opinion that on October 27, 2001, the subject Zag saw horse was unreasonably dangerous and defective. Further, the Zag saw horse when used in its intended fashion was more dangerous than the ordinary consumer would expect."
 {¶ 44} Huston's report thus indicated that Neighbors had a viable claim against Zag for *Page 12 
injuries sustained when the sawhorse collapsed. Neighbors' deposition indicates that he received medical treatment from Sports Ortho and Sports Medical Consultants, Middletown Anesthesia, Clinton Memorial Hospital, and Middletown Regional Hospital, and that he continues to have pain and disability from the injury. The dismissal of the claim due to the untimely filing of Neighbors' complaint foreclosed recovery from Zag and Hitachi for the injuries. Construing the evidence in Neighbors' favor, a fact-finder could reasonably conclude that Neighbors had a viable claim for personal injuries and that Ellis' failure to pursue the litigation resulted in a loss of compensation for Neighbors' injuries.
 {¶ 45} Neighbors' first assignment of error is sustained. Ellis' "cross-assignments of error" are overruled.
 {¶ 46} Neighbors' second assignment of error states:
 {¶ 47} "WHETHER THE LOWER COURT ERRED BY FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT THAT ELLIS, PARIS ELLIS WAS LIABLE TO NEIGHBORS FOR NEGLIGENT HIRING AND RETENTION OR SUPERVISION."
 {¶ 48} Neighbors claims that the trial court erred in granting summary judgment to Ellis on his claims of negligent hiring, retention and supervision.
 {¶ 49} As an initial matter, Ellis asserts that Neighbors' claims of negligent hiring, retention and supervision are merely restatements of his legal malpractice claim. We agree that negligent hiring, retention and supervision claims may be subsumed by a legal malpractice claim when an attorney-client relationship exists and the staff is assisting the attorney in his representation. See Sisler v. Ebner (1989), Geauga App. No. 88 G 1474 ("The legal responsibilities of counsel cannot be assigned or transferred to a secretary. Therefore, the neglect of his secretary, under these facts and circumstances, is likewise the attorney's neglect"). However, where the staff acts in the absence of an attorney-client *Page 13 
relationship, a negligence hiring, retention, and supervision claim may be a viable alternative to a legal malpractice claim.
 {¶ 50} In order to establish negligent hiring, supervision and retention of an employee by an employer, a plaintiff must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising, or retaining the employee as the proximate cause of plaintiff's injuries. State Farm Mut. Auto. Ins. Co. v. King, Warren App. Nos. CA2005-04-045, CA2005-04-049, 2006-Ohio-336, ¶ 40.
 {¶ 51} In granting summary judgment, the trial court concluded that Neighbors had failed to present evidence that Jackson was incompetent, that Ellis knew of her alleged incompetence, and that Ellis was negligent in hiring, retaining, or supervising Jackson.
 {¶ 52} According to Ellis' deposition, Ellis employed Jackson as a paralegal from December 1999 until January 2004. Although Jackson had not been formally trained as a paralegal, she had 14 years of experience at other law firms and she claimed to have done research for them. While employed with Ellis, Jackson's job included ordering medical records, preparing letters of representation, and drafting complaints. Ellis asserted that he signed everything that was sent from his office, although he acknowledged that Jackson may have stamped his name on "a simple criminal motion for discovery." Ellis acknowledged that he had seen Jackson send letters similar to the letter to Roth Associates, but only for cases in which the firm had a signed contract.
 {¶ 53} Jackson stated that her only involvement with Neighbors regarding his personal injury case constituted: (1) referring Neighbors to other attorneys who might handle the claim on his behalf, and (2) suggesting to Neighbors that he search the internet for form complaints *Page 14 
if he planned on filing a complaint pro se. Ellis was not aware of Jackson's actions, and he denied knowledge of the letter to Roth 
Associates.
 {¶ 54} In contrast, Neighbors stated in his affidavit that Jackson repeatedly assured him that Ellis was working on the case and that the lawsuit would be filed. He testified that Jackson ultimately gave him a packet of papers and forms to help him file a complaint pro se. Jackson also wrote to a collection agency regarding Neighbors' medical bills. Citing to Ellis' deposition, Neighbors states that Ellis "allowed his staff to open all mail and determine what he should and should not see." After Jackson's employment was terminated, Ellis found work that she had not completed. Ellis acknowledged that he had no safeguards in place to ensure that his staff did not commit the unauthorized practice of law. Neighbors asserts that Jackson's actions in providing a form complaint was inappropriate for a paralegal and that Ellis should have known that Jackson was performing work on his personal injury claim.
 {¶ 55} In our view, when construing the evidence in Neighbors' favor, there were genuine issues of material fact as to whether Ellis negligently supervised Jackson. It is undisputed that Ellis employed Jackson as a paralegal. Jackson allegedly gave Neighbors papers to assist him in filing a complaint and worked on Neighbors' injury claim, apparently without express approval from Ellis. Jackson also assured Neighbors that Ellis would handle his claim. Although Jackson denied working on Neighbors' claim and Ellis denied knowledge of any of Jackson's alleged actions, a reasonable fact-finder could conclude that Ellis permitted a culture within the firm where his staff worked on client's cases without his knowledge and engaged in the unauthorized practice of law. Because Neighbors could have reasonably believed that Ellis would file a timely complaint based on Jackson's conduct, Neighbors presented evidence that Ellis' negligence caused the loss of his claim against Hitachi and Zag. The trial court therefore erred in finding no genuine issues of material fact *Page 15 
regarding whether Ellis was negligent in supervising Jackson.
 {¶ 56} The second assignment of error is sustained.
 III. {¶ 57} The judgment of the trial court will be reversed and the matter remanded for further proceedings.
BROGAN, J. and FAIN, J., concur.
Wolff, J., Brogan, J., and Fain, J., of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3) Article IV of the Ohio Constitution. *Page 1