OPINION
{¶ 1} Plaintiffs-appellants, Jerrie Young-Hatten ("Young-Hatten") and her husband, Luddie Hatten ("appellants"), appeal from the judgment of the Franklin County Court of Common Pleas, in which that court entered judgment upon a jury verdict in favor *Page 2 
of defendant-appellee, AmySue Taylor ("appellee"), on appellants' claim for legal malpractice.
 {¶ 2} The relevant factual and procedural history taken from the record follows. On September 3, 2004, Young-Hatten underwent a laparoscopic oopherectomy, a procedure in which both ovaries are removed. Dr. Carol Jenkins ("Dr. Jenkins") performed the surgery. In the course of the surgery, Young-Hatten sustained a thermal injury to her ureter. Dr. C. Paul Sinkhorn ("Dr. Sinkhorn") surgically repaired the injury to her ureter, and she later began treating with Dr. Bruce Edward Woodworth ("Dr. Woodworth"), for pain that she continues to experience as a result of the injury.
 {¶ 3} While searching the telephone book for personal injury attorneys, appellants saw appellee's advertisement and chose to meet with her because she is both an attorney and a nurse. On February 16, 2005, appellants met with appellee and she agreed to investigate their case. On April 8, 2005, appellee sent appellants a letter informing them that she would represent them in connection with a medical malpractice claim against Dr. Jenkins. The parties signed a fee agreement in 2005, though the parties disagree as to the exact date. The fee agreement provided appellee the right to withdraw from representing appellants.
 {¶ 4} By letter dated May 18, 2005, appellee sent appellants a letter detailing four tasks she needed to accomplish in order to be able to evaluate whether appellants had a meritorious medical malpractice claim: (1) obtain Young-Hatten's medical records from Riverside Methodist Hospital, where the surgery had been performed; (2) send those medical records to a urologist for review; (3) discuss the matter with a gynecologist; and (4) speak with Dr. Woodworth. On August 28, 2005, appellee mailed 180-day letters to *Page 3 
Dr. Jenkins and other prospective defendants, which extended the statute of limitations for appellants' claims. See R.C. 2305.113(B)(1). Meanwhile, by July 12, 2005, appellee had met with Dr. Woodworth, who advised her that he would not render an opinion adverse to Dr. Jenkins because he did not feel that Dr. Jenkins had been negligent in her care of Young-Hatten. He advised that thermal injury to the ureter is a known risk of the surgery that Dr. Jenkins performed on Young-Hatten. According to appellee, she also discussed the case with Dr. James Nelson, a urologist, and Dr. John Russ, a gynecologist.
 {¶ 5} On February 7, 2006, appellee informed appellants that she would not file a lawsuit on their behalf and returned portions of their file to them. She advised appellants that the statute of limitations would expire on their claims on February 23, 2006. According to appellants, this was a miscalculation, as the actual expiration date was March 3, 2006. Unaware of the miscalculation, however, appellants told prospective attorneys of the February 23, 2006 expiration date when they sought other counsel later on February 7, 2006. With the expiration of the statute of limitations approaching, no other attorney would agree to take the case.
 {¶ 6} On January 10, 2007, appellants filed this action for attorney malpractice. They alleged that appellee's negligence proximately caused them to lose the opportunity to file their medical negligence claims and to lose the concomitant opportunity to settle those claims. Beginning on May 7, 2008, the case was tried to a jury. Dr. Sinkhorn testified on appellants' behalf, opining that Dr. Jenkins was negligent. Dr. Jenkins and Dr. Woodworth testified on appellee's behalf, both opining that Dr. Jenkins was not negligent. Attorney Charles Kettlewell testified that appellee had been negligent in her *Page 4 
representation of appellants. Attorney John Lancione testified that appellee had not been negligent in her representation. The jury ultimately returned a verdict in favor of appellee.
 {¶ 7} Appellants timely appealed and advance the following assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1: A COURT COMMITS REVERSIBLE ERROR BY CONSISTENTLY MISSTATING THE LAW IN ITS JURY INSTRUCTIONS AND CONFUSING THE JURY.
 ASSIGNMENT OF ERROR NO. 2: A TRIAL COURT COMMITS REVERSIBLE ERROR BY ALLOWING A NEUROLOGIST TO TESTIFY TO AN OBSETRICIAN/ GYNECOLOGIST'S STANDARD OF CARE.
 ASSIGNMENT OF ERROR NO. 3: A TRIAL COURT COMMITS REVERSIBLE ERROR BY DENYING A PROPER DISCOVERY REQUEST FOR ELECTRONICALLY STORED DATA.
 {¶ 8} Appellee filed a notice of cross-appeal, and advances six assignments of error, as follows:
 Assignment of Error No. 1: The trial court erred in denying Ms. Taylor's motion in limine to exclude all testimony offered by Charles Kettlewell, Esq.
 Assignment of Error No. 2: The Trial Court erred in denying Defendant Ms. Taylor's Directed Verdict Motion.
 Assignment of Error No. 3: The trial court erred in failing to instruct the jury that plaintiffs were entitled to money damages from Ms. Taylor based upon a claim of negligent legal representation only if plaintiffs had proven, by a preponderance of the evidence, the probable percentage of success of plaintiffs' medical negligence suit against Dr. Jenkins had that lawsuit been filed and tried to a court and/or jury.
 Assignment of Error No. 4: The trial court erred in failing to instruct the jury that in order to recover upon a claim of *Page 5 
negligent legal representation, the plaintiffs must prove, by a preponderance of the evidence, that Ms. Taylor's breach of the standard of care directly and proximately caused plaintiffs to lose the opportunity to proceed with a medical negligence case against Dr. Jenkins that would have resulted in a damages award against Dr. Jenkins.
 Assignment of Error No. 5: The trial court erred in instructing the jury that a defendant who negligently inflicts injury on another takes the injured party as he finds her because there existed no evidence that plaintiffs had any condition when Ms. Taylor first encountered them which was aggravated by her alleged negligence.
 Assignment of Error No. 6: The trial court erred in instructing the jury that they were permitted to award plaintiffs emotional distress damages.
 {¶ 9} We begin with appellants' appeal. In support of their first assignment of error, appellants argue that the trial court's instructions to the jury were prejudicially erroneous. In the case ofBooth v. Duffy Homes, Inc., 10th Dist. No. 07AP-680, 2008-Ohio-5261, we set forth the standards governing our review of a trial court's jury instructions:
 A trial court has the duty to instruct the jury on the applicable law on all issues raised by the pleadings and evidence. A trial court must give jury instructions that correctly and completely state the law. A jury charge should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. Furthermore, [a] charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury.
 Whether jury instructions correctly state the law is a question of law that an appellate court reviews de novo. Although an instruction may not be a full and comprehensive statement of the law, as long as it correctly states the law pertinent to the issues raised in the case, its use is not reversible error. However, an inadequate jury instruction that misleads the jury constitutes reversible error. *Page 6 
(Citations omitted.) Id. at ¶ 14-15.
 {¶ 10} Appellants argue that the trial court inaccurately stated the law applicable to the causation and damages elements of their legal malpractice claims by instructing the jury that appellants were required to prove that, absent appellee's malpractice, they would have prevailed in a trial against Dr. Jenkins. In other words, they maintain that the trial court erroneously defined the causation and damages elements of their cause of action so as to require them to prove a "case within a case." They argue that the "case within a case" requirement does not apply here because they are not claiming that appellee's negligence deprived them of a more favorable result than they actually obtained; rather, they are claiming that her negligence deprived them of theopportunity to pursue their medical malpractice claim in the first instance.
 {¶ 11} Appellants urge that the applicable statement of law is found in the case of Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259. There, the Supreme Court of Ohio reiterated the elements of a cause of action for legal malpractice:
 To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.
Id. at syllabus.
 {¶ 12} In Vahila, the plaintiffs claimed that the attorneys' negligence in connection with various criminal, civil, and administrative proceedings caused them over $300,000 in damages. The trial court granted summary judgment to the defendants because the plaintiffs had not demonstrated a genuine issue of fact as to whether they would have *Page 7 
prevailed in any of the legal proceedings in which the defendant attorneys had allegedly been negligent. The Supreme Court of Ohio rejected this approach, explaining:
 [W]e reject any finding that the element of causation in the context of a legal malpractice action can be replaced or supplemented with a rule of thumb requiring that a plaintiff, in order to establish damage or loss, prove in every instance that he or she would have been successful in the underlying matter(s) giving rise to the complaint. This should be true regardless of the type of representation involved.
 "A standard of proof that requires a plaintiff to prove to a virtual certainty that, but for the defendant's negligence, the plaintiff would have prevailed in the underlying action, in effect immunizes most negligent attorneys from liability. No matter how outrageous and morally reprehensible the attorney's behavior may have been, if minimal doubt exists as to the outcome in the original action, the plaintiff may not recover in the malpractice action. Except in those rare instances where the initial action was a `sure thing,' the certainty requirement protects attorneys from liability for their negligence.
 "A strict `but for' test also ignores settlement opportunities lost due to the attorney's negligence. The test focuses on whether the client would have won in the original action. A high standard of proof of causation encourages courts' tendencies to exclude evidence about settlement as too remote and speculative. The standard therefore excludes consideration of the most common form of client recovery.
 "In addition, stringent standards of proving `but for' require the plaintiff to conduct a `trial within a trial' to show the validity of his underlying claim. A full, theoretically complete reconstruction of the original trial would require evidence about such matters as the size of jury verdicts in the original jurisdiction. For example, an experienced attorney could testify that juries in that jurisdiction typically award verdicts of x dollars in similar cases. But such evidence is too remote and speculative; the new factfinder must try the merits of both the malpractice suit and the underlying claim to make an independent determination of the damage award. The cost and complexity of such a proceeding may well discourage the few plaintiffs otherwise willing to pursue the slim chance of success. *Page 8 
 "Other problems await those who do proceed with the `trial within a trial.' For example, the attorney in the original action may have negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim — and the passage of time has precluded obtaining that information — the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation."
Id. at 426-27, quoting Note, The Standard of Proof of Causation in LegalMalpractice Cases (1978), 63 Cornell L.Rev. 666, 670-71.
 {¶ 13} The court refused to add a fourth element to the cause of action for legal malpractice, which would require that plaintiffs prove their "case within a case." Rather, the court favored a case-by-case analysis based primarily upon whether the alleged negligence caused "damage or loss regardless of the fact that [the plaintiffs] may be unable to prove that they would have been successful in the underlying matter(s) in question." Id. at 427. The court went on to explain the rationale for this more flexible, case-by-case method:
 We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. * * * However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim.
Id. at 427-28. *Page 9 
 {¶ 14} The Vahila court cited the case of Krahn v. Kinney (1989),43 Ohio St.3d 103, in which the attorney was accused of having failed to communicate a plea offer to a bar owner, and of having failed to appear at an administrative license suspension hearing on behalf of the corporate liquor permit holder. The Vahila court explained that in such instances, whether or not the plaintiff can prove, by a preponderance of the evidence, that success would have been achieved in the underlying matter, the plaintiff has already suffered a compensable loss. The court stated that for the plaintiff in Krahn who was never informed of the plea offer, "the injury in such a situation is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record" and for the permit holder whose attorney failed to attend the hearing, "[t]he injury is not the penalty ultimately imposed by the commission, but the expenses involved in rectifying [the negligent attorney's] failure. [The permit holder] states a cause of action regardless of whether the ultimate penalty imposed by the commission is reversed."Vahila, at 425-26.
 {¶ 15} In rejecting a blanket requirement that plaintiffs in legal malpractice cases always prove their "case within a case," the court favored a case-by-case analysis of the causation and damages element of the claim. Therefore, the question in this case resolves to whether appellants must prove their "case within a case" or whether, because they allege a loss of opportunity to litigate their underlying claims, they need only prove that their loss of opportunity was proximately caused by appellee's negligence.
 {¶ 16} Appellants cite several cases in which this court has appliedVahila to legal malpractice claims and required only that plaintiffs in such cases demonstrate that their underlying cases were "colorable." See, e.g., Goldberg v. Mittman, 10th Dist. No. 07AP-304, 2007-Ohio-6599, discretionary appeal not allowed, 117 Ohio St.3d 1499, 2008-Ohio-2028; *Page 10 Nu-Trend Homes v. Law Offices of DeLibera, Lyons Bibbo, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, discretionary appeal not allowed,99 Ohio St.3d 1514, 2003-Ohio-3957; Frump v. Conley (Feb. 17, 2000), 10th Dist. No. 99AP-561.[1]
 {¶ 17} Appellants argue that the trial court's instructions to the jury in this case erroneously required appellants to prove more than "some evidence of the merits of the underlying claim." Vahila, at 428. Instead, appellants maintain, they were forced to meet a strict "but for" test for causation and were required to prove the merits of the underlying medical malpractice claim by a preponderance of the evidence. They argue that the trial court should have required proof only that the underlying medical malpractice claim was colorable, consistent with our application of Vahila in the precedent noted hereinabove.
 {¶ 18} In response, appellee argues that the trial court correctly required appellants to prove their "case within a case." Appellee cites the recent case of Environmental Network Corp. v. Goodman Weiss Miller,L.L.P., 119 Ohio St.3d 209, 2008-Ohio-3833. There, the Supreme Court of Ohio held, "[w]hen a plaintiff premises a legal-malpractice claim on the theory that he would have received a better outcome if his attorney had tried the underlying matter to conclusion rather than settled it, the plaintiff must establish that he would have prevailed in the underlying matter and that the *Page 11 
outcome would have been better than the outcome provided by the settlement." Id. at syllabus.
 {¶ 19} In Environmental Network, the defendant attorneys had represented the plaintiff in litigation involving claims and counterclaims. The plaintiffs claimed damages of $5.4 million in the underlying litigation, while they faced liability on counterclaims and creditors' bills in the amount of $3.75 million. The case proceeded to trial. On the second day of trial, the parties settled. The result of the settlement was that the plaintiffs received no damages, but they paid nothing out of pocket, and received erasure of some debt obligations. Later, they sued their attorneys, claiming that the defendants coerced them into the settlement by refusing to continue representing them at the trial if they did not settle. The plaintiffs claimed that they would have received a better result if the underlying case had been tried to its conclusion rather than being settled during trial. The trial court and court of appeals determined that the plaintiffs had met their burden of establishing proximate causation by producing "some evidence" of the merits of their claims and defenses in the underlying action.
 {¶ 20} The Supreme Court of Ohio reversed, reasoning that, because the plaintiffs' sole theory was that they would have achieved a better result had the trial continued, they were required to prove that they indeed would have achieved a better result through continuation of the trial to a verdict; the only way to prove that was to prove that their claims and defenses were meritorious enough to have actually procured the better result of which they claimed their attorneys deprived them. The court explained:
 Here, appellees' sole theory for recovery is that if the underlying matter had been tried to conclusion, they would have received a more favorable outcome than they obtained *Page 12 
in the settlement. Therefore, unlike the plaintiffs in Vahila, who sustained losses regardless of whether their underlying case was meritorious, appellees here could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement. Thus, the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial.
Id. at ¶ 18.
 {¶ 21} Appellants argue that Environmental Network is inapplicable because it is a "better result" case, while the present case is based upon a theory of "lost opportunity." They maintain that Vahila set forth a rule that a plaintiff in a "lost opportunity" case must demonstrate "some evidence" of the merits of the underlying claim, and thatEnvironmental Network set forth a more exacting standard for cases in which the plaintiff claims that the defendant's negligence deprived him of a complete trial on the merits, and that a complete trial would have produced a better result than he or she obtained through a settlement reached while trial was in progress. Because the present case involves an underlying claim that was never filed, and the alleged negligence consists in the deprivation of the opportunity to file it, appellants argue that the injury is the loss of that opportunity, not the loss of a better result. For this reason, they argue that EnvironmentalNetwork is inapposite.
 {¶ 22} Appellants argue that this case is more akin to the theory of recovery in Vahila, in which the plaintiffs alleged that they entered into settlements and plea agreements without vital knowledge of the legal consequences, rendering those decisions *Page 13 
involuntary. They claimed that the attorneys failed to adequately inform them of their defenses, and failed to protect and pursue those defenses. In this way, appellants argue, Vahila is similar to the present case because Vahila was about a lost opportunity to pursue a defense, and the present case is about a lost opportunity to pursue a claim.
 {¶ 23} It is true that the court in Environmental Network appears to draw a distinction between situations in which the underlying claim or defense is clearly viable (having survived all the way to trial) and the plaintiff claims it was deprived of the result that a verdict would have garnered them, and situations in which the underlying claim or defense was never pursued at all. However, on December 2, 2008, the Supreme Court of Ohio ruled that Environmental Network applied to prevent recovery by a legal malpractice plaintiff whose theory of liability was identical to appellants' and whose factual situation is strikingly similar to that in the case at bar.
 {¶ 24} In Neighbors v. Ellis, 12th Dist. No. CA2007-05-125,2008-Ohio-2110, the plaintiff was injured by a miter saw on October 27, 2001. Within ten days of the accident, he discussed a personal injury lawsuit with his attorney, and the two entered into a fee agreement. Throughout the following 23 months, the attorney represented to Neighbors that he was preparing to file a lawsuit on Neighbors's behalf, including sending letters of protection to creditors that sought payment of medical bills associated with treatment for Neighbors's injury. By October 2003, with no lawsuit having yet been filed, and the expiration of the statute of limitation approaching, Neighbors inquired with his attorney. The attorney declined to file a lawsuit, but gave him a form complaint for him to use in filing pro se. With his sister's assistance, Neighbors used the form to draft his own complaint, and filed it on October 28, 2003. The action was dismissed as untimely. *Page 14 
 {¶ 25} Neighbors filed a legal malpractice action against his attorney, alleging that the attorney's negligence resulted in Neighbors's loss of any opportunity to litigate his product liability claim. The trial court granted summary judgment in favor of the attorney, finding no genuine issue of fact regarding causation and damages. The trial court reasoned that Neighbors had failed to adduce sufficient evidence that he would have prevailed in his product liability action. Citing Vahila, the Twelfth Appellate District reversed, holding that Neighbors needed only to produce "some evidence" that his product liability claim was "colorable."
 {¶ 26} The Supreme Court of Ohio, in a 6-to-1 decision, reversed the court of appeals, without opinion, "on the authority ofEnvironmental Network." Neighbors v. Ellis, 120 Ohio St.3d 276,2008-Ohio-6105, reconsideration and clarification denied, 2009-Ohio-278
(Jan. 29, 2009). We discern from the Supreme Court of Ohio's action inNeighbors that it would find Environmental Network equally applicable to the present case, and would not accept appellants' proposition that a "lost opportunity" case should be subject to a different standard of proof of causation and damages than a "better result" case. Accordingly, we must agree with appellee's assertion that Environmental Network
applies here. Thus, we conclude that the trial court correctly instructed the jury that appellants were required to prove, by a preponderance of the evidence, that, but for appellee's alleged negligence, they would have prevailed in their claim against Dr. Jenkins for medical malpractice.
 {¶ 27} All of the errors that appellants claim and discuss in their brief under their first assignment of error relate to the trial court's decision to instruct the jury that appellants were required to prove their "case within a case." For the reasons discussed *Page 15 
hereinabove, the trial court did not commit error in charging the jury in this manner. Accordingly, appellants' first assignment of error is overruled.
 {¶ 28} In their second assignment of error, appellants argue that the trial court erred in allowing appellee's expert, Dr. Woodworth, to testify regarding whether Dr. Jenkins was negligent. Appellants maintain that Dr. Woodworth's testimony in this regard does not meet the requirement of Evid. R. 702(B), which requires that the witness be "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony" and Evid. R. 702(C), which requires that expert opinions be "based on reliable scientific, technical, or other specialized information."
 {¶ 29} "In order to establish a cause of action for medical malpractice, the plaintiff must show the existence of a standard of care within the medical community, breach of that standard of care by the defendant, and proximate cause between the medical negligence and the injury sustained. Expert testimony is generally required to prove the elements of medical malpractice whenever those elements are beyond the common knowledge and understanding of the jury." (Citations omitted.)Jones v. Schirmer (July 17, 2001), 10th Dist. No. 00AP-1330.
 {¶ 30} Appellants claim that because Dr. Woodworth is a urologist and not a gynecologist, he is not qualified to opine regarding the standard of care applicable to Dr. Jenkins's performance of Young-Hatten's laparoscopic oopherectomy. In support of this argument, appellants cite to Dr. Woodworth's testimony in which he stated that he does not know whether he qualifies as an expert on gynecological care, and to appellee's response to one of appellants' interrogatories, in which appellee states that Dr. *Page 16 
Woodworth is not qualified to opine as to the malpractice of a gynecologist. Appellants argue that the error was prejudicial because without Dr. Woodworth's testimony, the jury would have been presented with one expert on either side (instead of one for appellants and two for appellee), and appellants could have argued to the jury that appellee's only expert (Dr. Jenkins) was biased by her interest in the outcome.
 {¶ 31} "Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. A decision to admit or exclude evidence will be upheld absent an abuse of discretion. Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." (Citations omitted.) Beard v.Meridia Huron Hosp., 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 32} Here, we need not inquire into the potential prejudice, however, because the record persuades us that Dr. Woodworth was qualified to render his expert opinion, under Evid. R. 702, and the trial court did not abuse its discretion in admitting his testimony. "It has been held that an expert witness is not required to be the best witness on any particular subject." Lautenschlager v. MidOhio Cardiology Vascular Consultants, Inc., 10th Dist. No. 07AP-308, 2008-Ohio-3692, at ¶ 26, quoting Campbell v. The Daimler Group (1996), 115 Ohio App.3d 783,793, discretionary appeal not allowed (1997), 78 Ohio St.3d 1456.
 {¶ 33} We also note that "[n]either special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have *Page 17 
complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." State v. Hartman, 93 Ohio St.3d 274, 285,2001-Ohio-1580, citing State v. Baston, 85 Ohio St.3d 418, 423,1999-Ohio-280, reconsideration denied, 86 Ohio St.3d 1421, cert. denied,528 U.S. 1049, 120 S.Ct. 587. "Thus, it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications." Alexander v. Mt.Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 160.[2]
 {¶ 34} The record reveals Dr. Woodworth testified that he has performed laparoscopic oopherectomies. Here, though Drs. Jenkins and Woodworth are board-certified in different medical specialties, gynecology and urology, respectively, both physicians perform laparoscopic oopherectomies. The standard of care for the performance of laparoscopic oopherectomies is what was at issue, not the standard of care for gynecological care in general. By virtue of his professional training and experience in performing laparoscopic oopherectomies, Dr. Woodworth was competent, under Evid. R. 702, to give an expert opinion as to the standard of care for such procedures. For this reason, appellants' second assignment of error is overruled.
 {¶ 35} In their third assignment of error, appellants argue that the trial court erred by denying their motion to compel discovery of appellee's computer hard drive in order to obtain the electronic form of certain trial exhibits. Appellants sought the electronic form of *Page 18 
these exhibits for the purpose of forensic determination of the authorship and creation date of the documents.
 {¶ 36} Young-Hatten claims she received and signed a receipt purporting to be an inventory of records that appellee returned to her on February 7, 2006. That receipt was marked as Exhibit "T." Appellee produced a different document, marked as Exhibit "T-1," that was identical to Exhibit "T" except that it contained a paragraph that Exhibit "T" did not.[3] Appellee claimed that it was Exhibit "T-1" that Young-Hatten had signed on February 7, 2005, while Young-Hatten denied signing Exhibit "T-1 ."[4]
 {¶ 37} In an effort to invalidate Exhibit "T-1" appellants requested production of the computer hard drive upon which the three exhibits were stored. On March 3, 2008, they filed a motion to compel, seeking "exact mirrored images of the hard drives of Defendant's computers to access the data crucial to this case, which is believed to be altered." (Motion to Compel, at 1.) In opposition, appellee argued that the requested discovery was not narrowly tailored and would compromise the confidentiality of her other clients' attorney-client privileged information.
 {¶ 38} We need not pass upon this assignment of error, because the record reveals that it is moot. As appellants stated in their motion to compel, "the paragraph [in Exhibit "T-1"] seeks to limit defendant's own liability for her own lack of diligence in pursuing Ms. Young-Hatten's medical malpractice claim * * *."[5] Appellants sought the *Page 19 
electronic discovery in an attempt to show that Young-Hatten had not signed Exhibit "T-1." In their answer to the interrogatory given them, all members of the jury answered "No" to the question, "Do you find, by a preponderance of the evidence, that Ms. Taylor was negligent?" (Jury Interrogatory No. 1.) Because the jury determined that appellee was not negligent, it is irrelevant which version of the receipt Young-Hatten signed.
 {¶ 39} Accordingly, appellants' third assignment of error is overruled.
 {¶ 40} Our disposition of appellants' appeal renders appellee's cross-assignments of error moot. Having overruled all of appellants' assignments of error, and determined that appellee's cross-assignments of error are moot, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BRYANT and BOWMAN, JJ., concur.
BOWMAN, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] We also applied Vahila in the case of Williams-Roseman v.Owen (Sept. 21, 2000), 10th Dist. No. 99AP-871, in which the client alleged that her former attorney committed malpractice by failing to include certain causes of action in a complaint that the attorney had filed on the plaintiff's behalf. We affirmed summary judgment in the attorney's favor because the record demonstrated that the missing causes of action were not viable. However, the only element of the plaintiff's malpractice claim that was at issue in Williams-Roseman was breach of duty. We evaluated the viability of the causes of action she claimed she had wanted to pursue in the underlying litigation solely for the purpose of determining whether the defendant attorney had breached his duty of care in failing to pursue them on the plaintiff's behalf. Causation and damages were not at issue in Williams-Roseman. Therefore, that case, which the parties herein discuss in their briefs, is not particularly pertinent to the issues of causation and damages that are before us.
[2] Cf. State Auto Mut. Ins. v. Chrysler Corp. (1973),36 Ohio St.2d 151, 160, quoting 21 Ohio Jurisprudence 2d 429, Evidence, Section 421 (stating that "[t]he test for determining the competency of an exp2ert witness is * * * as follows: `* * * his qualification depends upon his possession of special knowledge which he can impart to the jury, and which will assist them in regard to a pertinent matter, which he must have acquired either by study of recognized authorities on the subject or by practical experience, and it must appear that he has an opinion of his own, or is able to form one, upon the matter in question'").
[3] That paragraph stated: "Pursuant to our discussion, Mrs. Taylor has provided me with supplemental claim letters to extend the statute of limitations until April of 2006, since that would be one year plus 180 days after my last treatment with Dr. Jenkins on October 4, 2004. I fully understand that this service of the supplemental claim letter may not be deemed by the court to extend the statute of limitations."
[4] Appellee also produced a third version of the receipt, Exhibit "X," which was identical to Exhibit "T-1" except that it was formatted differently.
[5] Mar. 3, 2008 Motion to Compel, at 5. *Page 1